Qualters v. Winchester                CV-04-390-SM  02/09/05
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Terrance P. Qualters,
      Plaintiff

      v.                                Civil No. 04-390-SM
                                        Opinion No. 2005 DNH 014
Town of Winchester,
      Defendant


                         **O R D E R**


      Pro se plaintiff, Terrance Qualters, brings this action

challenging "the Town of Winchester's right to seize [his]

property based upon the unconstitutionality of a State statute."

Complaint at para. 3.  In 2003, after plaintiff failed to pay

local property taxes for the years 1999, 2000, and 2001, title to

his property was transferred to the Town by tax deed.  That act,

says plaintiff, amounted to an unconstitutional taking because it

was based, at least in part, upon his non-payment of a tax that

the New Hampshire Supreme Court declared unconstitutional in

November of 2001.  The Town moves to dismiss plaintiff's

complaint, asserting that it is barred by principles of res

judicata, as well as the Rooker-Feldman doctrine.

**Standard of Review**

When ruling on a motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002). Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law. See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted). See also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

Here, in support of its motion to dismiss, the Town relies upon various court filings by plaintiff in prior state-court litigation, as well as decisions issued by New Hampshire's courts in those cases. Typically, however, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment. See Fed. R. Civ. P. 12(b). But, there is an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted). See also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). Since plaintiff does not dispute the authenticity of the documents upon which the Town relies, the court may properly consider those documents without converting the Town's motion to dismiss into one for summary judgment.

**Background**

Plaintiff is the former owner of property identified in the Town of Winchester Tax Records as Tax Map 6, Lots 15, 17, and 20. In April of 2000, he filed a petition for declaratory judgment in state superior court, asserting that the Winchester Tax Collector had "no authority to collect the excavation activity tax" under N.H. Rev. Stat. Ann. ("RSA") ch. 72-B ("Qualters I"). The court dismissed the action and denied plaintiff's motion to reconsider. He did not appeal that dismissal to the New Hampshire Supreme Court.

A few months later, in August of 2000, plaintiff filed a "Petition to Appeal Tax Abatement" in the state superior court, again asserting that the excavation activity tax was illegal ("Qualters II"). While that petition was pending, the New Hampshire Supreme Court declared the excavation activity tax levied under RSA 72-B unconstitutional. See Nash Family Inv. Props. v. Town of Hudson, 147 N.H. 233 (2001). Subsequently, however, for reasons that are not clear, plaintiff withdrew his tax abatement petition, before any ruling on the merits of his

claims. The court held that withdrawal to be with prejudice and plaintiff did not appeal that ruling.[1]

In April of 2003, as a result of plaintiff's failure to pay property taxes in the years 1999, 2000, and 2001 (which included, but was not limited to, his failure to pay the excavation activity tax assessed against his property in 1999 and 2000), Lots 15, 17, and 20 were conveyed to the Town by tax deed. In July, plaintiff filed a petition for declaratory judgment in state superior court ("Qualters III"). Essentially, plaintiff sought an abatement of the Town's assessment of an excavation activity tax on his property for the years 1999 and 2000. The court denied plaintiff relief, concluding that, as to the 1999

---

[1] Although the record is not fully developed, the "Tax History for Terrance Qualters," which was submitted by the Town, suggests that the excavation activity tax was "abated" with respect to lots 15, 17 and 20 for the tax year 2001 - that is, after the state supreme court declared the excavation activity tax to be unconstitutional. The Town did not, however, retroactively abate the excavation activity tax levied against plaintiff's property for the prior years. That, it appears, would have required plaintiff to file (and pursue to a final resolution on the merits) a petition for abatement. See, e.g., Johnson & Porter Realty Co. v. Comm'r of Rev. Admin., 122 N.H. 696, 699-700 (11982) (holding that individuals who paid a tax which was subsequently declared unconstitutional were "entitled to a refund of the tax they paid under that provision, provided that they timely file[d] their demand for reimbursement" as provided by state law) (emphasis supplied).

tax assessment on plaintiff's property, his petition was barred by the doctrine of res judicata, since the same issue was presented in Qualters II.  And, as to the 2000 tax assessment on plaintiff's property, the court held that he had not filed a timely petition for abatement, as is required by state law.  It does not appear that plaintiff appealed that decision.

After failing to prevail on his claims in state court, plaintiff filed this federal action, challenging the Town's authority to convey his property by tax deed based, in part, on his failure to pay a local tax which the state supreme court subsequently declared unconstitutional.

## Discussion

In support of its motion to dismiss, the Town asserts that plaintiff's complaint is barred by the doctrine of res judicata. It also says that the Rooker-Feldman doctrine precludes this court from exercising jurisdiction over plaintiff's claims.

I.   The Rooker-Feldman Doctrine.

The Rooker-Feldman doctrine precludes a federal district court from reviewing a final judgment entered in a state court, and from considering claims that are inextricably intertwined with those raised in the state court proceeding.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983).  See also Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 703 (1st Cir. 1995).  Federal claims are inextricably intertwined with state court proceedings (even if precisely the same claims were not raised previously in state litigation) if the party had an opportunity to raise those claims in the state court and if their resolution in federal court would effectively provide a form of federal appellate review of the state court's decision.  See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Moreover, once a state court issues a final judgment, a federal district court lacks jurisdiction to review that decision even if the state judgment is patently wrong or was entered following patently unconstitutional proceedings.  See Feldman,

460 U.S. at 486.  Thus, a litigant may not seek to reverse a final state court judgment "simply by casting his complaint in the form of a civil rights action."  Ritter v. Ross, 992 F.2d 750, 754 (7th Cir. 1993) (citation omitted).

   Here, the constitutionality of the tax assessments against plaintiff's property for the years 1999 and 2000 was squarely presented to the state superior court in Qualters III.  That court held that plaintiff's challenge to the 1999 assessment was barred by res judicata and his challenge to the 2000 assessment was precluded by operation of state law, since plaintiff procedurally defaulted by failing to file a timely petition for tax abatement.  Plaintiff's federal complaint in this case is plainly an attempt to relitigate the very issues resolved against him in state court.  The proper forum in which to seek review of those claims was the New Hampshire Supreme Court, not the federal district court.  Consequently, plaintiff's constitutional claims are "foreclosed by a textbook application of the Rooker-Feldman doctrine."  Picard v. Members of the Employee Ret. Bd., 275 F.3d 139, 145 (1st Cir. 2001).

II.  Res Judicata.

Even if the plaintiffs' constitutional claims were not precluded by the Rooker-Feldman doctrine, they would be barred by the doctrine of res judicata.

The federal full faith and credit statute, 28 U.S.C. § 1738, commands federal courts to employ state rules of res judicata when determining the preclusive effect, if any, to be given to a prior state court determination.  See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 468 (1982).  Accordingly, if the Rooker-Feldman doctrine did not preclude this court from hearing plaintiffs' constitutional claims, principles of res judicata, as developed by the New Hampshire Supreme Court, would apply.

Under New Hampshire law, "[t]he doctrine of res judicata precludes the litigation in a later case of matters actually litigated, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action."  In re Alfred P., 126 N.H. 628, 629 (1985) (citations

omitted).  "In order for res judicata to apply to a finding or ruling, there must be 'a final judgment by a court of competent jurisdiction [that] is conclusive upon the parties in a subsequent litigation involving the same cause of action.'"  <u>In re Donovan</u>, 137 N.H. 78, 81 (1993) (quoting <u>Marston v. U.S. Fidelity & Guar. Co.</u>, 135 N.H. 706, 710 (1992)).

In other words, for the doctrine of res judicata to apply, "three elements must be met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered on the first action."  <u>Brzica v. Trustees of Dartmouth College</u>, 147 N.H. 443, 454 (2002).  The term "cause of action" means the "right to recover, regardless of the theory of recovery."  <u>Eastern Marine Constr. Corp. v. First S. Leasing</u>, 129 N.H. 270, 274 (1987) (citations omitted).

Here, each of those three essential elements is present.  As to the existence of the first and third elements, there can be little doubt that the parties in the two proceedings are identical, the state superior court resolved plaintiff's claims

against him on the merits, and plaintiff did not appeal that ruling to the New Hampshire Supreme Court. Finally, the "causes of action" advanced (and the underlying facts upon which those claims are based) in the two proceedings are also identical. In the earlier state court proceeding, plaintiff asserted that the Town's assessment of the excavation tax (and subsequent conveyance of his property by tax deed) was unconstitutional - the very claim he seeks to advance in this forum. State principles of res judicata preclude him from relitigating that claim in this forum. To the extent plaintiff believed that the state superior court erred in its legal conclusions, the proper avenue of recourse would have been to file an appeal with the New Hampshire Supreme Court. And, if he was dissatisfied with the outcome in that forum, he could have filed a petition for certiorari with the United States Supreme Court. He did not.

### Conclusion

The tax sale of plaintiff's property and subsequent conveyance of that property to the Town by tax deed based, at least in part, upon plaintiff's failure to pay an unconstitutional tax might appear to be completely unjust or

unfair.  But, at this point, the arguments advanced by plaintiff are of little more than academic interest.  His property was conveyed to the Town by tax deed because he failed to pay not only 1999 and 2000 assessments for the unconstitutional excavation activity tax, but also because he failed to pay other legitimate and constitutional taxes assessed against his property as well.  Consequently, even if plaintiff had not been assessed the excavation activity tax in 1999 and 2000, his property <u>still</u> would have been conveyed to the Town based upon his long-standing failure to pay his fair share of the taxes assessed against his property.  Even then, however, had he properly invoked readily available state procedures, plaintiff could have easily obtained an abatement for the 1999 and 2000 excavation activity taxes.  He did not.  Nor does it appear that he attempted to redeem his property from the Town in accordance with state law, by tendering payment for the several tax years for which he made no payments.

   In the end, however, whether plaintiff availed himself of available state remedies, whether he was justified in refusing to pay any of the taxes assessed against his property for several years, or whether the Town lawfully took title to his property by

tax deed are not questions properly before this court. Regardless of the merits of plaintiff's claims, this is not the proper forum in which to litigate what is essentially an appeal of an adverse decision issued by the state superior court.

For the foregoing reasons, as well as those set forth in defendant's memorandum, defendant's motion to dismiss (document no. 3) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

```
                              _____
                              Steven J. McAuliffe
                              Chief Judge
```

February 9, 2005

cc:  R. Matthew Cairns, Esq.
     Terrance P. Qualters